0-2232 from the District of Nebraska, Barbara Perry v. Zoetis. Well just a minute, I don't have a visual, I don't have a picture of Mr. Wentz. Let me try here, there we go, now I can see him. All right, very well, Ms. Neary, we'll hear from you first. Thank you, Your Honor. May it please the court, Mr. Wentz. The District Court disregarded decades of Supreme Court and Eighth Circuit Equal Pay Act precedent by granting summary judgment in favor of Zoetis based upon job description rather than what the Supreme Court and this court in dozens of cases have required. Namely, the Supreme Court and this court, the Eighth Circuit, requires a thorough analysis of the actual work performed by the female plaintiff and the two higher paid male comparators. Now, you're asking yourself, what precedent did the trial judge rely upon? Contrary to this circuit, the District Court cited to a 2011 New Jersey District Court opinion for the proposition that job titles and classifications, rather than analysis of work performed, should be examined at the Mahasha stage. The District Court also relied upon a 2013 District Court opinion from the Eastern District of Michigan when it rejected this court's long-standing mandate that actual work performed must be examined in Equal Pay Act cases. Again, the District Court erred when it concluded that job descriptions rather than work performed ruled the day. The District Court also erroneously relied upon a District Court opinion from the Middle District of Alabama in support of its erroneous conclusion that job descriptions control Equal Pay Act cases. Judge Kobus, I think you concede that the higher job categories have additional responsibilities. Is that right? Yes. And I guess, does your argument then boil down to the fact that your client was just a particularly good and aggressive and confident employee who went above and beyond, therefore she should have been compensated at those higher levels? Is that... I'm trying to pin down what the argument here is. Sure. Your Honor, what's interesting about that, the way that the lab techs positions are classified is that it's cumulative, meaning the highest position that we're male, Nathan Gross, was cited as or classified as and he received $21 per hour. Mr. Gross had to be able to perform the duties of the 20-1 and the 20-2 lab tech jobs as part of his job. So you start at 20-1, then you perform the duties of the 20-2, which incorporate and include the duties of the 20-1 position, and likewise the 30-1 position, you must be able to perform the duties of the 20-1 and the 20-2 job. But Mr. Gross was not able to perform any of the duties whatsoever and he was paid $21 an hour. My client had worked there at Zoetis as a lab tech since 2011. She had two master's degrees, she had three and a half years of experience, and again she was making $3 an hour plus, Mr. Gross. Now I don't think she was just an overzealous employee. Her boss, Rex Newsome, who supervised the female plaintiff and the two males who were higher pay, would assign her these duties that included duties, all of the duties from the 20-1 position, the duties from the 20-2 position, and the duties of the 30-1 position. Barb Perry was the only person who was able, out of the three that we're talking about today, who was able to perform satisfactorily the functions of those jobs. Now Judge Cupp, the trial judge, and with all due respect to him, he completely ignored decades of job descriptions. And what is really telling in this case is when Zoetis filed for summary judgment, they did not offer one shred of evidence about what the work was actually being performed, not one shred of evidence. In opposition to the defendant's motion for summary judgment, Ms. Perry offered a huge amount of testimony from the supervisor of Perry and the two male comparators, and it is absolutely undisputed that Rex Newsome, who was the supervisor, testified the higher paid males were unable to do their jobs. They were higher paid and Ms. Perry satisfactorily performed nearly every component of the 30-1 as well as the 20-1 and 20-2 positions. The trial judge relied on these three out-of-circuit district court opinions and substituted those for the U.S. Supreme Court in Corning v. Brennan, which required that you have to look at the performance of the job, what duties were actually being performed. May I ask you a question on that point? I just wonder if the judge really said what you're attributing to him. I read the statement in his order. He says at this stage the focus of inquiry is on the job, not on a comparison of the individual abilities of the employees. He doesn't say he doesn't contrast job description with with actual job performance. He's talking about job versus abilities. I thought you were talking about job description versus job perform. I'm sorry. I don't want to talk over anyone. I finished my question. Please proceed. Thank you. I believe that the judge held, yes, he is looking at the focus of the inquiry is on the job, and I agree, not a comparison of the individual abilities of the employees. But the court then concludes that my client testified honestly that, yes, the job descriptions were different, cumulative, but different, and at that point the trial judge stopped his analysis. The undisputed evidence is that Barb Perry was doing the job at the direction of Rex Newsome, her supervisor, and satisfactorily performed it, and she was the lowest paid of all of them. But counsel, doesn't Corning suggest that the relevant inquiry is, I want to get the phrasing here right, so I'm going to take a look at my notes, jobs the performance of which requires equal skill, effort, and responsibility. In other words, a 30-1 seems to require just the nature of the job, not looking simply at the job description, requires additional skills over and above a 20-1 or a 20-2. In other words, if your client was not performing skills that were at the 30-1 level, she wouldn't be subject to discipline, right, because her job doesn't require those additional skills or competencies. Am I making that question clear? No, your honor, you are, and I would absolutely and respectfully disagree with you that Rex Newsome, while Perry was performing the duties of the 30-1 position, as well as the 20-1 and 20-2, she absolutely could have been subjected to discipline if she didn't satisfactorily do those jobs to which he assigned her. And so this, I mean for decades, this court, and I went back through and look at 20 years of Equal Pay Act cases, and not once has this court ever, ever ruled that job your 2007 Brown versus Fred's decision, which is an Equal Pay Act case, the jury found for the plaintiff after they analyzed the work that was being performed, and while there were minor differences in, you were on the panel, your honor, and affirm the jury verdict. And in fact, Judge Wollman, in the Bearden versus International Paper case, you were on the panel that held, in an Equal Pay Act case, whether different employees are performing equal work does not depend on job titles, but rather on the actual work performed. And in opposition to the Zoeticism, I mean, and we know that, I'll just cite a few of the cases, application of the Equal Pay Act depends not on job titles or classifications, but on the actual requirements and performance of the job. Holland versus Sam's Club, Simpson versus Merchants and Planters Bank, EEOC versus Universal Honor Writers, Yonce versus Fremont County, Hunt v. Nebraska Public Power, Brodus versus OK Industries, the list goes on and on and on. Once the trial judge determined that the job descriptions of the 30-1 included all the requirements of the 20-1 and 20-2 positions and a few extra duties, he stopped the analysis, period, and he threw the case out on a summary judgment. This was the most shocking testimony of the supervisor in a deposition that I have ever taken, where the supervisor, the lab manager, came in and testified that Perry was performing all of these jobs duties of all of the positions and it was undisputed, period. Now, the undisputed testimony of Newsome was really simple. He said that the Perry and the two male comparators worked in the same lab under his direction. They were supervised by him. He set the pay rates for all three of these employees. He testified that the higher paid males could not perform all of the functions of their jobs, but the plaintiff could. The district court wholly and completely ignored the undisputed testimony of Brett Newsome. Now, I'm going to, I want to reserve some time and on the affirmative defenses, we know under Simpson v. Merchants and Planners Bank, the defendant must prove that the pay differential was based on a factor other than sex, and in this case, the trial judge weighed those factors himself, and we know that that was wrong because in Simpson, the court found a reasonable jury could have rejected the employer's explanation that were based on college degrees, but in this case, Ms. Perry had two master's degrees, one from Purdue, one from UNL. The higher paid male, one of them had an undergraduate degree. The only one other one had a master's degree. Now, and under the gender claim, I'm sorry, I'm just moving through this. We know that the court, that Nebraska, Nebraska Fair Employment Practices Act has only three exceptions to unequal pay, and those are the bona fide seniority or merit system, a system that measures earnings by quality or quantity, and those employees who work in different locations. Nebraska has not adopted the catch-all exception like Title VII has for pay-based claims, so the court analyzed it under McDonald- Douglas, but the court makes no mention whatsoever about the pretext that we have. We know that Zoetis, under the Lake v. Yellow Transportation case, we showed pretext by showing that Zoetis deviated from their policies. They failed to do an investigation when it was reported. They failed to take any remedial action, and we know when companies deviate from their policies, that is pretext, and that's under Lake v. Yellow Transportation, Young v. Warner v. that the court reversed the erroneous opinion from the trial judge. Very well. Thank you for your argument. Mr. Wentz, we'll hear from you. Thank you, Your Honor. Good afternoon. May it please the court. Ken Wentz, appearing on behalf of the defendant at Police Zoetis LLC. The court got it exactly right with the question, Judge Kobus, that you asked, which is, aren't we comparing employees instead of comparing jobs? That's exactly what the plaintiff is trying to get the court to do here. As with any statute-based claim, you have to go back to the express language of the statute. The express language of the Nebraska Equal Pay Act, or the federal Equal Pay Act, says that it requires different pay by members of the opposite sex for equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions. Now, Ms. Perry identifies only two comparators, Mitchell Foster and Nathan Gross. And in the sterility lab, where all three of them worked, there are four distinct jobs. All of them have the same prefix of lab technologist, but that's where the similarities end. There's a lab technologist 10-2, which is the very bottom-based lab technologist job. And then there's the lab technologist 30-1, which is the top lab technologist job. And in between, there's a 20-1 and a 20-2. Ms. Perry admits in her deposition and in the statement of undisputed facts that each of these jobs is different. There's different duties and responsibilities, and there's an increased level of responsibility and skill and responsibility that goes into each of these jobs. Once Ms. Perry admits that each of these jobs is different and is not equal with regard to the same skill, the same effort, or the same responsibility, that kills Ms. Perry's prima facie case. She cannot meet the second element of the prima facie case, which is that these jobs are the same. What Ms. Perry wants this court to do is to write out the words jobs which require out of the equation and simply say, are people paid the same for equal skill, equal effort, and equal responsibility, no matter what the job is. But that's not what the text of the Equal Pay Act says. The text of the Equal Pay Act says you have to measure jobs. You don't measure performance of the individuals. Because everybody knows that no matter whether if you're at Walmart or at Google or at Wentz Shoe Company, the performance of employees can differ. And that's why this court shouldn't indulge the plaintiff's invitation to write out the words jobs which require from the Equal Pay Act. Well, suppose the company put a woman in 20-2 but then assigned her effectively the duties of 30-1 and didn't pay her as a 30-1. Are you saying that there would still be no claim because her job was 20-2 on the books of the company? The court would undergo an analysis to see what they were doing. And assuming that the plaintiff didn't admit that these jobs are different and that she wasn't performing the 20-2 job, then maybe. But that's not what we have here. We have different people. Like for example, Nathan Gross. He was only in his job for eight months. And the undisputed testimony is that the way that Mr. Gross's pay was set is that the Mr. Newsham along with Ms. Sittler sat down and reviewed the candidate's application, background, education, and experience. Then they compared that background, education, experience to the other people in the lab to see what their expectations for Mr. Gross would be based on his six years of lab-based experience. Ms. Perry was a substitute teacher before she began in the lab. And she had worked her way up from a 10-2 to a 20-1. And the only way to advance to other positions is to see if different people in the lab can do those other positions. But when Mr. Gross was onboarded, the job duties and responsibilities, the expectations of what he would perform were in line with a 30-1, which is a different job than what Ms. Perry had and different duties and responsibilities than what Ms. Perry had. Now, Mr. Gross ended up not working out. Was his performance what Zoetis thought it would be? No. He only lasted eight months. And so what happens if you don't perform to that 30-1 position? Well, you can be performance managed out. And that's what with regard to Mitch Foster, he was in the 20-2 position, a position that the undisputed testimony shows that Mr. or Ms. Perry was actually going to receive a promotion into had she not resigned in favor of a job which, in her words, would use her skills in statistics and math daily. That's why she resigned. She didn't cite any pay reason for her resignation in her resignation letter. And so Mitch Foster, though, he was a 20-2. And why was he a 20-2? He was a 20-2 because Zoetis, like most companies, if you do a lateral transfer within the company, you retain your grade and you retain your pay. And so when Mr. Foster was transferred from the production lab to the sterility lab, he retained his 20-2 position. And he was held responsible for performing all the duties and responsibilities of that 20-2 position. And he retained his pay. And that's why Zoetis can prevail, not only by defeating or because plaintiff can't show the second element of her prima facie case, but also because that's the glaring factor other than sex that exists here to show the pay differential between Mr. Foster and Ms. Perry. Now, turning to the gender discrimination piece of the case, first of all, Ms. Perry seeks to introduce direct evidence on appeal for the first time. Nowhere in Ms. Perry's summary judgment motion does she cite to any direct evidence. Indeed, the standard that she advocates at the district court level to apply to her gender discrimination claim is the McDonnell Douglas burden-shifting standard, which only applies in the absence of direct evidence. The district court agreed and applied the McDonnell Douglas burden-shifting standard and then, and so indicating that there is no direct evidence. So to the extent Ms. Perry asserts that there's direct evidence for the first time on appeal, that should be disregarded. So what are Ms. Perry's adverse employment actions here? Well, she only cites to one in her opening brief and that is on page 39 where she was said she suffered unadverse employment action to wit she was paid less than male co-workers. So her only adverse employment action is that she was paid less. Now to establish a prima facie gender discrimination case, she has to show that she was in a protected class, which we agree with. She has to establish that she was in a position, which is not in dispute. And then she has to show that she suffered an adverse employment action, which is in dispute because her pay wasn't reduced. Her benefits weren't reduced. She did not suffer an adverse employment action. And the Tatamay v. St. Cloud State case shows that when a plaintiff complains about lower pay and the university in that case didn't raise the pay, that did not rise to the level of an adverse employment action. And that's one of her claims here. And then finally, she has to show that she was treated differently from similarly situated people or similarly situated men. And she does not do that because Mr. Gross and Mr. Foster are not similarly situated. They held completely different positions. Mr. Gross again was in a 30-1 position, held to different standards, held to different duties and the same. Now, for the first time in her reply brief, Ms. Perry claims that there's three additional adverse employment actions here. The first is a failure to train, the second is a failure to promote, and the third is a denial of pay increase request. We've already touched on the denial of pay increase request and why that does not constitute an adverse employment action here. With regard to the failure to train, that is not in her invented complaint, that is not in her motion for summary judgment, that is not in her administrative charge. And even if it were alleged, the only training she claimed she didn't receive was this EU training, which in her deposition she admits she received. And she says that Zoetis didn't deny her any other training. And the court rightly upheld that even if this was something that was raised by Ms. Perry, it was not something that would form the basis for a gender discrimination claim. With regard to the failure to promote, again not in the amended complaint, not in her motion for summary judgment, and not in the charge, and only raised for the first time in her reply brief on appeal. And here though, there is no dispute that she alleges that she asked for a promotion in spring of 2017 with Mr. Newsham, and that they were looking into getting her a promotion to that 20-2 position. And what does any company do when they're looking at promoting someone? Well they have to make sure, especially in Zoetis's case, we were dealing with laboratory tests and laboratory results. You have to make sure that she can do the job. You can't just throw someone into the job. And so was Mr. Newsham giving her different bits and pieces of a 20-2 position to see if she would be good in that 20-2 role? Yes. And that is, that was, they were lining her up for a promotion to that 20-2, just like she'd been promoted into the 20-1 position. With regard to the appellant's claims that the district court just ignored all this 8th Circuit case law, the 8th Circuit, or the 20-2 in its decision, the district court cited to the Hunt case, the Bearden case, the Hutchins case, the Younts case, Tenku, Strecker, and more cases that were all cited by the plaintiff. The only difference is that the court, when it was looking to analyze the plaintiff's claim as to whether individuals' performance, namely the individual performance, not the job, not to determine what the duties were for each job, but the individual's performance, that's when the district court went outside the circuit and pulled cases to show that it's regularly accepted across the United States that you do not look to the performance of individuals, but you look to the actual jobs, the skills, the efforts, and the responsibilities of the jobs themselves, not the background or the performance of people performing those jobs. Governor, I have three minutes left, but unless the court has any other questions, I'm happy to cede my time. And we would ask that the court affirm the summary judgment granted in favor of Zoetis for the district court because Ms. Perry has not established the Prima Fache Equal Pay Act or Nebraska Fair Employment Practices Act case. Thank you. Very well. Thank you for your argument. Ms. Neary, it looks like you have a minute 37 remaining. We'll hear from you and Rabel. Thank you, Your Honor. The district court did give lip service to the Eighth Circuit cases, but the trial judge didn't follow those cases. He went out of circuit to three lowly district courts and failed to analyze the actual work performed. Perry wants this, wants the trial judge to follow the law of this circuit in the U.S. Supreme Court. That's what we're requesting decades of precedent. Newsom, Supervisor Newsom, assigned Perry the duties of the 20-2 and 20-3, 30-1 position, and Perry would have, had not done those duties, she could have been fired or they are trying to make an exception that you could drive a truck through, that you can pay a woman less in a lesser qualified position, but assign her duties that are more difficult. Counsel, do you have a record say at your fingertips for the fact that she would have been fired for not doing, say, a 30-1 responsibility? I don't recall that in the record, but it's Well, Your Honor, what I can tell you, I can't give you an exact site, but I know that Rex Newsom conducted her performance evaluation and she was evaluated on the job duties that she was performing of 20-2 and 30-1. That was part of her evaluation, performing those duties, but so we're asking the court reverse the district court and require that the district court to comply with U.S. and Eighth Circuit precedent. Thank you. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course. Thank you.